No. 24-3282

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

INTERNATIONAL UNION OF PAINTERS & ALLIED TRADES
DISTRICT COUNCIL NO. 6, *et al.*

Plaintiffs-Appellants

v.

WARREN T. SMITH, *et al.*

Defendants-Appellees

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

BRIEF OF APPELLEES
WARREN T. SMITH AND DANA CLARK

Allen S. Kinzer (Ohio Bar No. 0040237)
Brian W. Dressel (Ohio Bar No. 0097163)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
Columbus, Ohio 43215
Telephone: (614) 464-8326
Facsimile: (614) 464-8326
askinzer@vorys.com
bwdressel@vorys.com

*Counsel for Defendants-Appellees*
*Warren T. Smith and Dana Clark*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iv

STATEMENT ABOUT ORAL ARGUMENT ...................................... 1

STATEMENT OF JURISDICTION.................................................... 2

STATEMENT OF ISSUES ................................................................ 2

STATEMENT OF THE CASE ........................................................... 2

    A.    The Fund............................................................................ 2

    B.    The Key Actors and the Origins of Their Dispute ............................ 3

    C.    The District Court Denies the Union's Requested Relief .................. 6

SUMMARY OF THE ARGUMENT .................................................. 7

STANDARD OF REVIEW ............................................................... 8

ARGUMENT .................................................................................... 8

    A.    The Appellants Have Not Shown Irreparable Harm ........................... 8

        i.    Appellants Do Not Identify a Specific, Irreparable Harm ....... 10

        ii.    Appellants' Theory of Inherent Irreparable Harm by Entrenchment Fails Under Binding Supreme Court Precedent ................................................................... 12

    B.    Alternatively, Appellants Are Unlikely to Prevail on the Merits and Fail to Demonstrate the Other Preliminary-Injunction Factors ............................................................................ 17

        i.    Appellants Are Unlikely to Prevail on the Merits ................... 17

        ii.    Appellants Fail to Establish the Remaining Preliminary-Injunction Factors ................................................................... 20

    C.    Conclusion........................................................................ 21

CERTIFICATE OF COMPLIANCE ........................................................ 22

CERTIFICATE OF SERVICE ............................................................... 23

ADDENDUM ........................................................................................ 24

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>CASES</u>

*Bonnell v. Lorenzo*, 241 F.3d 800 (6th Cir. 2001) ......................................................8

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ...............................................10

*D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324 (6th Cir. 2019) .......................................8

*Demopoulos v. Whelan*, No. 17-CV-5823 (JMF), 2017 U.S. Dist. LEXIS
   156407 (S.D.N.Y. Sept. 25, 2017) .......................................................14

*Enchant Christmas Light Maze & Mkt. v. Glowco, LLC*, 958 F.3d 532 (6th
   Cir. 2020)...............................................................................9

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010) ..............13

*Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100 (6th Cir. 1982) ........9

*Kanuszewski v. Mich. HHS*, 927 F.3d 396 (6th Cir. 2019)............................... 10, 11

*Loper Bright Enters. v. Raimondo*, ___ U.S. ___, 144 S. Ct. 2244 (2024).............15

*Masino v. Montelle*, No. 05 CV 2447 (ERK)(RML), 2005 U.S. Dist. LEXIS
   51934 (E.D.N.Y. July 14, 2005)...................................................... 14, 15

*McGlone v. Bell*, 681 F.3d 718 (6th Cir. 2012) .......................................................8

*Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945
   F.2d 150 (6th Cir. 1991) ........................................................................10

*NHL Players Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712 (6th
   Cir. 2003)...............................................................................8

*NLRB v. Amax Coal Co.*, 453 U.S. 322 (1981)............................................... passim

*NLRB v. Mich. Conference of Teamsters Welfare Fund*, 13 F.3d 911 (6th
   Cir. 1993)...............................................................................13

*Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566 (6th Cir.
   2002) ....................................................................................10

*Performance Unlimited v. Questar Publishers*, 52 F.3d 1373 (6th Cir. 1995) .......20

*Stryker Emp't Co., LLC v. Abbas*, 60 F.4th 372 (6th Cir. 2023) ..............................8

*Sumner County Schools v. Headrick*, 942 F.3d 324 (6th Cir. 2019) ..................9, 10

*Teamsters Local Union No. 786 v. Blevins*, No. 19 C 6317, 2020 U.S. Dist.
 LEXIS 184704 (N.D. III. Oct. 6, 2020) ...................................................... 14, 15

## STATUTES

28 U.S.C. § 1292(a)(1) ...................................................................................2

## OTHER AUTHORITIES

Department of Labor, Pension & Benefit Welfare Programs, Opinion 85-41
 A, Dec. 5, 1985 (1985 ERISA LEXIS 3) ............................................................15

## STATEMENT ABOUT ORAL ARGUMENT

Appellees Smith and Clark do not believe oral argument is necessary because the district court denied Appellants' Motion for a Preliminary Injunction by applying established Supreme Court and Sixth Circuit precedent.  To the extent the Court schedules oral argument, however, Smith and Clark would welcome the opportunity to present their arguments and answer any questions the Court may have.

## STATEMENT OF JURISDICTION

Appellees Smith and Clark agree that the Court has jurisdiction over Appellants' appeal of the district court's order denying Appellants' motion for a preliminary injunction under 28 U.S.C. § 1292(a)(1). As Smith and Clark were not parties to the district court's order dismissing the claims against some Defendants, Smith and Clark take no position on the Court's jurisdiction over that portion of the appeal.

## STATEMENT OF ISSUES

With respect to Appellees Clark and Smith, the only issue presented is whether the district court properly denied Appellants' Motion for a Preliminary Injunction because Appellants did not demonstrate that they would suffer irreparable harm. The Court may also consider whether the district court's decision should be affirmed on the alternate basis that Appellants are unlikely to succeed on the merits of their claims.

## STATEMENT OF THE CASE

**A.** **The Fund**

The Southern Ohio Painters Health and Welfare Plan and Trust Fund (the "Fund") is a multiemployer benefit plan under the Employee Retirement Income Security Act of 1974 ("ERISA") and Labor Management Relations Act ("LMRA"). (Complaint, R. 5, Page ID # 355.) The Fund covers members of District Council

Six of Appellant International Union of Painters and Allied Trades (the "Union"). (*Id.* at 354–55.)  District Six Union members work in Ohio and neighboring states, with members being part of the Union, as well as their local chapters.  (Hearing Transcript, R. 42, Page ID # 1597.)

Trustees manage the Fund, with the labor and management sides appointing eight Trustees each per the Trust Agreement.  (Trust Agreement, R. 5-3, Page ID # 614.)  The labor-side Trustees are appointed from specific local unions.  (*Id.*, Page ID # 615.)  As a Taft-Hartley Fund, when there are uneven numbers of Trustees due to vacancies, Trustee votes remain equally weighted between labor and management.  (*Id.*, Page ID # 617–18.)

Appellant Trustees are the Union-appointed Trustees other than Appellees Smith and Clark.  Appellant Sherwood is the Union's business manager and has served as a Trustee since 2014.  (Hearing Transcript, R. 42, Page ID # 1601–02.)  Appellants Naegele and Denney are also Union-Appointed Trustees.  (Complaint, R. 5, Page ID # 354–55.)  Appellant Chilson is a participant in the Fund.  (*Id.*, Page ID # 355.)  Appellees Turi, Conley, Eck, Hudepohl, Young, and Qvick are employer-appointed Trustees.  (*Id.*, Page ID # 355–56.)

## B.  The Key Actors and the Origins of Their Dispute

Appellee Warren Thomas Smith joined the Union in 1965 after being honorably discharged from the United States Marine Corps.  (Hearing Transcript, R.

3

42, Page ID 1565.)  He was appointed as a Fund Trustee in 1988 and has served in that capacity since.  (Hearing Transcript, R. 43, Page ID 1858.)  In 2000, he began performing administrative duties for the Fund.  (*Id.*)  He became the Fund's assistant administrative manager under a written employment agreement in 2005.  (*Id.*)  Appellee Dana Clark joined the Union in 1988 after working for a union contractor for the previous five years.  (*Id.*, Page ID # 1948.)  During his time, he has worked as a business representative for the Union and has been a Fund Trustee since 2014.  (*Id.*, Page ID # 1948–49.)

In June 2020, Appellee Christopher Naegele, in his capacity as a Business Representative for the Union, entered into a series of "Indemnity and Hold Harmless Agreement[s]" with a contractor called Sixth Region Remodeling, LLC ("Sixth Region").  (*Id.*, Page ID # 2045–46.)  Per these agreements, the Union agreed to indemnify and hold harmless contractors that subcontracted work to Sixth Region in the event Sixth Region failed to make required contributions to the Fund.  (*Id.*, Page ID # 2046.)  Shortly thereafter, the Fund Trustees learned that Sixth Region was not contributing to the Fund as required.  (Hearing Transcript, R. 42, Page ID # 1716–17.)  This resulted in the Fund filing an ERISA delinquent-contribution case in the United States District Court for the Southern District of Ohio against Sixth Region.  (*Id.*, Page ID # 1721.)  This case initially resulted in that court issuing a $700,000

4

default judgment against Sixth Region when it failed to appear. (Hearing Transcript, R. 43, Page ID # 1816.)

Throughout this process, Naegele, who is also a Fund Trustee, attempted to impede the Fund's efforts to get to the bottom of the Sixth Region situation. He characterized the Fund's audit of Sixth Region's contributions and delinquencies to the Fund as "harassment," directed Sixth Region to "disregard" a demand letter following the default judgment, asked the Fund's Plan Administrator to "waive" any penalties assessed to Sixth Region, and stated that the lawsuit "needs to stop." (*Id.*, Page ID # 2069, 2077, 2082; R. 42, Page ID # 1702.)

As part of the investigation into Sixth Region, the indemnity agreements— which the Union would claim Naegele entered into outside his authority (*see* Hearing Transcript, R. 43, Page ID # 1817)—came to light and the Fund Trustees moved forward with an audit of Sixth Region. (Hearing Transcript, R. 42, Page ID # 1713.)

While the investigation into Sixth Region picked up, Appellant James Sherwood began his attempts to remove Clark and Smith as Trustees. (*Id.*, Page ID # 1741.) Although unsuccessful in removing Smith and Clark as Trustees, Sherwood did succeed in forcing them to resign from the Union of which they had been members for decades. (*Id.*, Page ID # 1918, 1939.) Sherwood filed Union charges against Clark and Smith because they refused Sherwood's orders to resign as Fund Trustees. (*Id.*, Page ID # 1822.) Still unsuccessful in removing Clark and Smith as

5

Trustees through the processes provided in the Trust Agreement, Sherwood and the other Appellants filed the district court action against Clark, Smith, and six Trustees appointed by the management side. Sherwood was joined as a plaintiff by Naegele and Lee Denney, who are also Trustees, the Union itself, and Everett Chilson, who is a Union member and Fund participant. (*See* Complaint, R. 5.)

**C.    The District Court Denies the Union's Requested Relief**

In the district court, Appellants immediately sought a preliminary injunction that would have (1) removed Smith and Clark as Trustees; (2) terminated any employment relationship between Clark, Smith, and the Fund; (3) prohibited Trustees from serving as paid employees of the Fund; (4) prohibited payment of personal legal expenses of Trustees by the Fund; (5) prohibited any of the Defendants from interfering with Sherwood's ability to install his chosen Trustees; and (6) prohibited interference with Appellants' ability to act as Trustees and fiduciaries of the Fund. (Motion for Preliminary Injunction, R. 2.)

The district court permitted a brief period of discovery and then held a three-day evidentiary hearing. At the hearing, the court heard testimony from Plaintiffs Sherwood and Naegele, Defendants Clark, Smith, Kyle Young and Jeremy Turi, and Defendants Clark and Smith's subpoenaed witnesses, Joe Cryster (a former Union-appointed Trustee) and Karla Del Campo (the owner of Sixth Region). (Hearing Transcripts, R. 42–44.) The parties then submitted post-hearing briefing on the

6

Motion for a Preliminary Injunction.  (*See* Post-Hearing Briefs, R. 40, 45, 46, 48, 49.)  On March 8, 2024, the Court issued an Order denying the Motion.  (*See* Order, R. 58.)  This appeal followed.

## SUMMARY OF THE ARGUMENT

This case is before the Court on a denial of a preliminary injunction, not a final merits determination.  Thus, the question is not which side will ultimately prevail, but rather whether Appellants carried their burden to show an entitlement to a preliminary injunction.  They did not.  In their opening brief to this Court, Appellants remain unable to articulate any specific harm that they will suffer if they do not receive a preliminary injunction that could not be remediated by damages awarded following the full litigation of these claims.  Under controlling precedent, that failure is dispositive of the preliminary-injunction motion.

Even if Appellants had made a showing of irreparable harm that would have allowed the district court to proceed to the remaining preliminary-injunction factors, their Motion would have failed because Appellants cannot show a likelihood of success on the merits of their underlying claims.  First, the Supreme Court has foreclosed Appellants' position that the Union and its leaders are permitted to control the trustees it appoints to the point of unfettered removal authority regardless of what the Trust's governing documents provide.  Second, the record shows a case with

significant factual disputes, and those disputes prevent Appellants from showing that they are likely to prevail on the underlying merits of their claims.

**STANDARD OF REVIEW**

This Court reviews the district court's decision to deny a preliminary injunction for abuse of discretion. *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019) (citing *NHL Players Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 717 (6th Cir. 2003)). In conducting this assessment, the Court reviews legal conclusions de novo and factual findings for clear error. *Stryker Emp't Co., LLC v. Abbas*, 60 F.4th 372, 380 (6th Cir. 2023) (citation omitted).

The factors that the Court considers in determining whether a preliminary injunction is warranted are: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction." *McGlone v. Bell*, 681 F.3d 718, 735–36 (6th Cir. 2012) (quoting *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001)).

**ARGUMENT**

**A.    The Appellants Have Not Shown Irreparable Harm**

Preliminary injunctions, which afford relief before the parties fully litigate their claims, are "extraordinary" remedies and are "reserved only for cases where it

8

is necessary to preserve the status quo until trial." *Enchant Christmas Light Maze &*
*Mkt. v. Glowco, LLC*, 958 F.3d 532, 535 (6th Cir. 2020).  Accordingly, this Court
requires that the movant show irreparable injury before proceeding to balance the
four preliminary-injunction factors discussed above; "even the strongest showing on
the other three factors cannot 'eliminate the irreparable harm requirement.'" *Sumner*
*County Schools v. Headrick*, 942 F.3d 324, 326–27 (6th Cir. 2019) (quoting
*Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).
This is sensible because "[i]f the plaintiff isn't facing imminent and irreparable
injury, there's no need to grant relief *now* as opposed to at the end of the lawsuit."
*Id.* at 327 (emphasis in original) (citation omitted).  It was on this basis that the
district court disposed of Appellants' Motion for a Preliminary Injunction.  (Order,
R. 58, Page ID # 2411.)

  The district court was correct in its assessment and certainly did not abuse its
discretion in reaching it.  Before the district court, Appellants were unable to
articulate a specific, irreparable harm they would suffer were the district court to
deny the preliminary injunction, and they fail to articulate one in their brief to this
Court.  The purported irreparable harms Appellants advance are speculative and their
theory of irreparable harm stemming from Smith and Clark being "entrenched" as
Trustees contradicts with controlling Supreme Court precedent.  This Court can,
therefore, affirm based on the irreparable-harm finding alone.

  i.  <u>Appellants Do Not Identify a Specific, Irreparable Harm</u>

Harm is only irreparable when it is "not fully compensable by monetary damages" or "based upon a violation of the plaintiff's constitutional rights." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). Additionally, the "injury 'must be both certain and immediate,' not 'speculative or theoretical.'" *Sumner Cnty. Schs.*, 942 F.3d at 327 (quoting *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)). A "substantial risk" of future harm may be sufficient to support a finding of irreparable harm, but "allegations of *possible* future injury" are insufficient. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013) (emphasis in original) (citations omitted). Finally, [p]ast harm allows a plaintiff to seek damages, but it does not entitle a plaintiff to seek injunctive or declaratory relief." *Kanuszewski v. Mich. HHS*, 927 F.3d 396, 406 (6th Cir. 2019). As they did in the district court, these principles guide the analysis of whether Appellants have established irreparable harm.

The district court concluded that Appellants had "not shown they will suffer irreparable injury *not compensable by money damages* without a preliminary injunction." (Order, R. 58, Page ID # 2411 (emphasis added).) Appellants do not offer any argument that this conclusion was flawed. In fact, their brief does not

10

address the district court's finding or the ability to quantify potential harm with monetary damages at all.

Instead, Appellants broadly assert that "[i]rreparable harm will result if Smith and Clark are permitted to continue serving as both employees and Trustees of the Fund." (Aplt. Br. at 39.)  They rattle off a series of purportedly wrongful actions that Smith and Clark allegedly took without stopping to explain any context for those actions or why they were improper for Smith and Clark to take as Trustees.   In addition to the fact that Appellants' characterization of these events is still in dispute in the district court litigation, Appellants' argument points to *past* actions Smith and Clark allegedly took, not future harms.  (*See* Aplt. Br. at 39–40.)  Past harms, even if proven, cannot be used as a basis to seek a preliminary injunction, which awards prospective relief.  *See Kanuszewski*, 927 F.3d at 406.  Appellants' inability to proffer a specific, articulable harm that will befall them or the Fund if Smith and Clark remain serving as Trustees as this litigation pends is consistent with the proceedings below, where the district court noted that Appellants had been unable to even speculate or theorize about future harms.  (*See* Order, R. 58, Page ID # 2404.)

Unable to identify actual, prospective harms that they would face if Clark and Smith remain Trustees, Plaintiffs call Smith a "loose cannon" who has engaged in "bad behavior." (Aplt. Br. at 39–40.)  They also suggest Clark will engage in similar "bad behavior." (*Id.* at 40.)  These generalized character attacks fall short of

Appellants' burden to show that there is a "substantial risk" of future harm that will not be compensable by monetary damages. Plaintiffs are thus left with only their argument that "unlawful entrenchment" inherently causes irreparable injury. As explained below, this argument also fails.

    ii.    <u>Appellants' Theory of Inherent Irreparable Harm by Entrenchment Fails Under Binding Supreme Court Precedent</u>

At base, Appellants argue that any provision that prevents a union or, in this case, one of its representatives, from unilaterally removing a union-appointed trustee at will constitutes unlawful entrenchment. Appellants claim that they never have argued that union-appointed trustees must be removable at will by a union officer vested with power to so remove them (Aplt. Br. at 26), but that is precisely the argument that Appellants made below and in this brief. (*See* Aplt. Br. at 27 (arguing that the Trust Agreement cannot conflict with the Union's constitution when it comes to removal authority); Pl. Post-Hearing Br., R. 40, Page ID # 1523 (arguing that "no showing beyond a showing that a Trustee is serving contrary to the wishes and governing documents of the appointing authority is needed" to establish irreparable harm.).) The Supreme Court has rejected this framing.

In *NLRB v. Amax Coal Co.*, 453 U.S. 322, 330 (1981), the Supreme Court held that:

> although § 302(c)(5)(B) requires an equal balance between trustees appointed by the union and those appointed by the employer, nothing in the language of § 302(c)(5) reveals

> any congressional intent that a trustee should or may administer a trust fund in the interest of the party that appointed him, or that an [appointing party] may direct or supervise the decisions of the trustee he has appointed.

*Id.*  Appellants even concede that *Amax* mandates that, once someone is appointed a trustee, their loyalty is to the fund they are entrusted to oversee and not to the party that appointed him.  (Aplt. Br. at 35–36.)  Allowing an appointing officer like Sherwood to unilaterally remove Trustees who had displeased him in their performance would effectively result in appointing entities controlling the Trustees' decisions, as they could immediately remove any Trustee who did not vote or act in conformance with the appointing authority's wishes.  The Supreme Court has also held that at-will removal power is "a powerful tool for control" of an inferior.  *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 510 (2010).  This is especially true in this context, where, absent such control, "a union welfare trustee can owe no allegiance to either the union organization or employer association that appointed him."  *NLRB v. Mich. Conference of Teamsters Welfare Fund*, 13 F.3d 911, 918 (6th Cir. 1993) (citing *Amax*, 453 U.S. at 334).

Appellants do not explain how a Trustee whom the Union could immediately remove could functionally act with the "undivided loyalty" to the Trust that the law requires.  *Id.*  Instead, Appellants meet this controlling precedent governing the relationship between Taft-Hartley plan trustees, their appointing authorities, and the funds they oversee with a series of district court cases that do not even address *Amax*.

These cases, all decided after *Amax*, each adopt some version of the view that the appointing authority should be able to remove trustees at will. *See Demopoulos v. Whelan*, No. 17-CV-5823 (JMF), 2017 U.S. Dist. LEXIS 156407, at *11 (S.D.N.Y. Sept. 25, 2017) (holding union "lost its crucial ability to oversee the work of its appointed Trustees" when it was unable to terminate those trustees at will); *Masino v. Montelle*, No. 05 CV 2447 (ERK)(RML), 2005 U.S. Dist. LEXIS 51934, at *43 (E.D.N.Y. July 14, 2005) (holding union trustees "must be accountable to the union"); *Teamsters Local Union No. 786 v. Blevins*, No. 19 C 6317, 2020 U.S. Dist. LEXIS 184704 (N.D. Ill. Oct. 6, 2020) (granting preliminary injunction upon finding that trustee was unlawfully entrenched).

These cases are fatally flawed in that they do not grapple with *Amax*'s holding that trustees have fiduciary obligations to the fund they administer, not to the authority that appointed them. Appellants fault the district court because it "cannot seem to reconcile the statement in *Demopoulous* that 'the Union has lost its crucial ability to oversee the work of its appointed Trustees' with *Amax*'s concept of independent trustees." (Aplt. Br. at 37.) But it is not the job of the district court— or this Court, for that matter—to reconcile Supreme Court precedent that binds it with a district court case from of New York that does not. Rather, as the district court observed, "the fact that these courts did not address *Amax* strikes the Court more as a reason *not* to rely on these cases, than a reason to do so" given that the

14

district court cases did not make any effort to square their reasoning with *Amax*. (Order, R. 58, Page ID # 2409.)

Additionally, some of these cases are premised on a 1985 letter from the Department of Labor that advocated the approach Appellants ask the Court to adopt here. *See Masino*, 2005 U.S. Dist. LEXIS 51934, at *21; *Blevins*, 2020 U.S. Dist. LEXIS 184704, at *11. That letter is, of course, not binding authority. *See generally Loper Bright Enters. v. Raimondo*, ___ U.S. ___, 144 S. Ct. 2244, 2267 (2024) ("[a]n agency's interpretation of a statute cannot bind a court") (internal citation and quotation marks omitted). Additionally, the letter itself explicitly states that it is *not* speaking to Taft-Hartley plans. *See* Department of Labor, Pension & Benefit Welfare Programs, Opinion 85-41 A, Dec. 5, 1985 (1985 ERISA LEXIS 3) ("[w]e offer no comments regarding any other law, including section 302(c) of the Labor Management Relations Act, 1947"). Put simply, the non-binding cases Appellants are attempting to use to overcome binding Supreme Court precedent are based on an opinion letter that explicitly disclaims any applicability to the type of plan at issue here.

Appellants do not advocate for a generally applicable rule to govern situations like this one. Instead, in what appears to be a concession to *Amax*'s requirement that trustees be independent of the authority that appointed them in adhering to their fiduciary duty to the fund, Appellants argue that the relief they seek would not

compromise *Amax*'s concerns but "would allow the Union to fulfill its fiduciary duty as appointing authority to remove holdover Trustees who are serving in contravention of the Trust Agreement, who have committed prohibited transactions, who have repeatedly engaged in self-dealing, and who are acting to advance their personal interests and/or the Employer Trustees' interest rather than acting for the sole benefit of the participants of the Fund." (Aplt. Br. at 35–36.) They go on to discuss Sherwood's testimony about the reason he attempted to remove Smith and Clark. (*Id.* at 36.)

Setting aside that Appellants do not substantiate Sherwood's claims with record evidence despite bearing the burden of proof on this Motion, this rule would be meaningless in future cases. Appellants are essentially telling the Court that it need not concern itself with *Amax* because, in this case, Smith and Clark's actions warrant removal. Of course, any appointing union or employer would be able to make a facial statement that the trustee it was attempting to remove had breached a fiduciary duty before unilaterally removing that trustee. But were that all the law required, *Amax*'s holding would be meaningless with appointing authorities able to freely construct pretext for removing trustees it wished to replace.

With controlling Supreme Court precedent establishing the importance of independent trustees, the Court should not instead rely on non-binding district court cases that did not address the Supreme Court's holding.

**B.**   **Alternatively, Appellants Are Unlikely to Prevail on the Merits and Fail to Demonstrate the Other Preliminary-Injunction Factors**

Although the failure to establish irreparable harm is sufficient on its own to warrant denial of a preliminary injunction, Appellants also fail to show a strong likelihood that they will prevail on the merits of their claims and the remaining preliminary-injunction factors.

>    i.    Appellants Are Unlikely to Prevail on the Merits

In addition to the unlawful-entrenchment arguments discussed above,[1] Appellants' substantive allegations consist of a list of actions purportedly taken by Smith and Clark that Appellants argue warrant their removal as Trustees. These allegations include refusal to resign as Fund Trustees when directed to do so by Sherwood, voting against their removal as Trustees, serving as Trustees while also receiving compensation from the Fund, voting for amendments to the Trust Agreement Appellants contend are unlawful, cutting off benefits for failure to pay Union dues, making other changes to benefits, and directing the expenditure of the Fund's resources in ways Appellants contend are improper.

The tenor of Appellants' briefing below and in this Court is that their view, specifically Sherwood's, is an absolute right, and any opposition to that view is an

---

[1] Appellees Smith and Clark refer to the arguments on "unlawful entrenchment" contained in the preceding sections, as those arguments support a conclusion that Appellants are not likely to prevail on the merits of those arguments in addition to the conclusion that Appellants cannot establish irreparable harm.

absolute wrong. They cast any vote that prevents Sherwood from installing his chosen Trustees or for changes to the administration of the Fund that Sherwood opposes as a breach of fiduciary duty that, presumably, harms plan participants. As the district court recognized, however, allegations of base conduct, without more do not mean much. (Order, R. 58, Page ID # 2410.) Although the district court was addressing the issue of irreparable harm, its logic still carries. Whether an individual decision is good or bad for plan participants may well be a matter for debate. Refusal to take direction from Sherwood in fulfilling their role as Trustees does not inherently mean that Clark and Smith are acting unlawfully or not in the best interests of the Fund. In a posture where Appellants carry the burden of proof, simply stating conduct is unlawful without providing any context is insufficient.

For example, Appellants seek Smith's removal as a Trustee, premised on him allegedly supporting the misuse of funds and taking other improper actions. But when the district court held a hearing on the Motion, Kyle Young, an employer-appointed Trustee testified that the Fund was one of the most fully funded in the region and that he felt Sherwood's actions were not in the best interests of the Fund. (Hearing Transcript, R. 43, Page ID # 1970.) Jeremy Turi, another employer-appointed Trustee, testified that the Fund was better off with Smith as "both an employee and a trustee" because "he's added value for years" and "puts his heart and soul into the guys on this fund." (*Id.*, Page ID # 1995.) Notably, contrary to

18

Appellants' suggestion that Clark and Smith vote as a bloc with the management trustees, Turi also testified that he, as a management trustee, voted *against* Smith's motion to remove Sherwood and Naegle as trustees.  (*Id.*, Page ID # 1992–93.)

Smith and Clark's unclean-hands argument adds further complexity to this situation.  Although not discussed in Appellants' brief, the timing of this dispute coincides with Smith and Clark raising concerns with Appellant Naegele's efforts to interfere with the Fund auditing Sixth Region after he had executed indemnity agreements with Sixth Region knowing that it was delinquent on their required contributions to the Fund.  (*Id.*, Page ID # 2069–71.)  Naegele's efforts continued after the Fund was forced to bring a lawsuit against Sixth Region, and he sent an email to Sherwood and Denney stating that the lawsuit "needs to stop."  (*Id.*, Page ID # 2082.)  Naegele, as a Fund Trustee, then directed Sixth Region to "disregard" a judgment demand letter after a federal court granted default judgment for the Fund.  (*Id.*, Page ID # 2077.)  Appellants Sherwood and Denney, for their part, did not take any action to address Naegele.

This Court has previously recognized that "[t]he concept of unclean hands may be employed by a court to deny injunctive relief where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party."  *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373, 1382 (6th Cir. 1995).

19

All of this is not to say that the Court is in a position to adjudicate Appellee's unclean-hands argument or determine that Appellants' substantive causes of action definitively fail; the Federal Rules of Civil Procedure provide for a robust discovery, motion, and litigation process to answer those questions.  Rather, the above demonstrates that the record developed for the preliminary-injunction hearing is not as clean or complete as Appellants portray it.  This is a complicated case with disputed facts and, as the district court observed, it "simply [was] not in the position to know, based on the paltry record to date, who has the better of any of these factual arguments."  (Order, R. 58, Page ID # 2410.)  Appellants, who carry the burden on this Motion, have not identified any error in the district court's assessment of the factual record, much less clear error that would support an immediate award of the relief they seek at the outset of the case.

    ii.   <u>Appellants Fail to Establish the Remaining Preliminary-Injunction Factors</u>

The two remaining factors for the Court to consider are whether a preliminary injunction would cause harm to others and whether it would serve the public interest. Appellants' arguments on these points are brief, and they suffer from the same flaw discussed above:  the record is not sufficiently complete to answer these questions.

Appellants' arguments here are conclusory.  They assert that an injunction would serve the public interest by protecting benefits and preventing the misuse of plan funds.  But, as discussed above, the record does not establish that plan funds

have been misused or that plan participants have been denied benefits in a manner that harms the public interest. Again, the parties would be best served by proceeding to the next stage of litigation where they could litigate their claims in full.

**C.** **Conclusion**

The district court properly denied Appellants' Motion for a Preliminary Injunction because Appellants did not demonstrate they would suffer irreparable harm absent injunction, and that failure is dispositive. To the extent the Court considers them, the other preliminary-injunction factors, they also support affirming the district court.

Dated: September 6, 2024                 Respectfully submitted,

                                         */s/ Brian W. Dressel*
                                         Allen S. Kinzer (Ohio Bar No. 0040237)
                                         Brian W. Dressel (Ohio Bar No. 0097163)
                                         Vorys, Sater, Seymour and Pease LLP
                                         52 East Gay Street
                                         Columbus, Ohio 43215
                                         Telephone: (614) 464-8326
                                         Facsimile: (614) 464-8326
                                         askinzer@vorys.com
                                         bwdressel@vorys.com

                                         *Counsel for Defendants-Appellees*
                                         *Warren T. Smith and Dana Clark*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because Microsoft Word, the word-processing system used to prepare the brief, indicates that the brief contains 4,663 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

The brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: September 6, 2024              Respectfully submitted,

*/s/ Brian W. Dressel*
Allen S. Kinzer (Ohio Bar No. 0040237)
Brian W. Dressel (Ohio Bar No. 0097163)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
Columbus, Ohio 43215
Telephone: (614) 464-8326
Facsimile: (614) 464-8326
askinzer@vorys.com
bwdressel@vorys.com

*Counsel for Defendants-Appellees*
*Warren T. Smith and Dana Clark*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that this brief was filed on this 6th day of

September, 2024 via the CM/ECF system, which will serve all counsel of record.

<u>/s/ *Brian W. Dressel*</u>
Brian W. Dressel

## **ADDENDUM**

| Record Entry Number | Description | Date Filed | Page ID # |
|---|---|---|---|
| 2 | Motion for Preliminary Injunction | 08/09/2023 | 310–339 |
| 5 | Verified Complaint | 08/09/2023 | 349–371 |
| 5-3 | Trust Agreement | 08/09/2023 | 602–648 |
| 40 | Plaintiffs' Post-Hearing Brief | 1//22/2023 | 1515–1526 |
| 42 | Preliminary Injunction Hearing Transcript Day 1 | 11/29/2023 | 1530–1798 |
| 43 | Preliminary Injunction Hearing Transcript Day 2 | 11/29/2023 | 1800–2093 |
| 44 | Preliminary Injunction Hearing Transcript Day 3 | 11/29/2023 | 2094–2159 |
| 45 | Union Trustee Defendants' Post-Hearing Brief | 12/1/2023 | 2160–2170 |
| 46 | Employer Trustee Defendants' Post-Hearing Brief | 12/01/2023 | 2171–2181 |
| 48 | Plaintiffs' Reply to Employer Trustees' Post-Hearing Brief | 12/6/2023 | 2193–2202 |
| 49 | Plaintiffs' Reply to Union Trustees' Post-Hearing Brief | 12/6/2023 | 2203–2213 |
| 58 | Opinion and Order | 03/08/2024 | 2385–2427 |